161 S.W.3d 402 (2005)
In the Interest of Clayton Dean MOREAU, a Minor:
Robert Scott Royster, Petitioner-Appellant,
v.
Mahealani Moreau Royster, Respondent-Respondent,
William and Marilyn Council, Intervenors-Respondents.
No. 26073.
Missouri Court of Appeals, Southern District, Division Two.
April 29, 2005.
*404 Daniel R. Schramm, Chesterfield, MO, for Appellant.
Richard Anthony Skouby, St. James, MO, for Respondents William and Marilyn Council.
No brief filed by Respondent Mahealani Moreau Royster.
JEFFREY W. BATES, Chief Judge.
William and Marilyn Council ("the Councils") were granted letters of guardianship for their grandson, Clayton Dean Moreau ("C.D."), by the probate division of the Circuit Court of Pulaski County, Missouri, in April 1999. The probate division issued these guardianship letters to the Councils in case no. CV596-150P ("Case 150P") after a trial at which the court adjudged C.D.'s natural parents, Robert Royster ("Father") and Mahealani Moreau Royster ("Mother"), unfit to act as the child's guardians. Father appealed from this judgment. The Councils' appointment as C.D.'s co-guardians was affirmed by this Court. In re Moreau, 18 S.W.3d 447 (Mo.App.2000).
Father's marriage to Mother was dissolved in October 1999 in North Carolina. The North Carolina court did not enter any orders concerning C.D.'s custody or visitation because the court lacked jurisdiction to do so under the Uniform Child Custody Jurisdiction Act ("UCCJA"), §§ 452.440-.550.[1]
In October 2001, Father filed a document entitled "Petition for Custody" in the Circuit Court of Pulaski County, Missouri. This action was assigned case no. CV501-1265DR ("Case 1265DR"). Father acknowledged in this petition that letters of guardianship for C.D. had been issued to the Councils in Case 150P and that Missouri was C.D.'s home state under the UCCJA. Mother was named as the respondent in the petition.[2] In Mother's answer, she admitted Case 150P was a guardianship case involving C.D. that was pending in the probate division of the Pulaski County Circuit Court. Mother also asserted the trial court lacked jurisdiction to adjudicate C.D.'s custody in Case 1265DR.
In March 2002, Father filed in Case 150P a third amended petition to terminate C.D.'s guardianship. Father alleged the guardianship was no longer necessary for any reason because Father "is a willing, able, and fit parent who can reassume custody of his son." The Councils denied this allegation in their answer to the petition. *405 Mother did not join in Father's petition or otherwise seek to have the trial court reconsider or set aside its earlier adjudication that she was unfit to serve as C.D.'s guardian.
Case 150P and Case 1265DR were consolidated for the purpose of presenting evidence and assigned to the Honorable Tracie Story for disposition. Trial commenced on July 9, 2003. At the beginning of this consolidated trial, Mother's attorney again challenged the trial court's jurisdiction to adjudicate the issue of C.D.'s custody in Case 1265DR and moved to dismiss this action. The trial court overruled the motion and declined to dismiss the case.
In January 2004, separate judgments were entered in each case. In Case 150P, the court entered a judgment denying Father's petition to terminate the guardianship. The judge found Father was still unfit to be the minor's guardian because he had not substantially changed his behavior or associations that previously caused him to be adjudged unfit. In Case 1265DR, the court awarded legal and physical custody of C.D. to the Councils.
Father appealed from both judgments. In appeal no. 26075, we affirmed the trial court's judgment in Case 150P denying Father's petition to terminate C.D.'s guardianship. In re Moreau, No. SD26075, ___ S.W.3d ___, 2005 WL 957764 (Mo.App. filed April 27, 2005). In appeal no. 26073, Father challenges the trial court's judgment granting third-party custody to the Councils in Case 1265DR.
This court's appellate jurisdiction is derivative. Williams v. Kimes, 25 S.W.3d 150, 157 (Mo. banc 2000); Larimer v. Robertson, 800 S.W.2d 154, 156 (Mo. App.1990). If the trial court lacked jurisdiction over the case below, we lack jurisdiction over the appeal. Williams, 25 S.W.3d at 157. Appellate jurisdiction cannot be conferred by acquiescence, waiver or express consent. Larimer, 800 S.W.2d at 156. Therefore, we are required to examine, sua sponte, the issue of whether the trial court had jurisdiction to adjudicate C.D.'s custody in Case 1265DR. See State ex rel. Bird v. Weinstock, 864 S.W.2d 376, 380 (Mo.App.1993). If the trial court lacked jurisdiction to do so, we do not have jurisdiction to address the merits of Father's appeal. Henningsen v. Independent Petrochemical Corp., 875 S.W.2d 117, 118 (Mo.App.1994); Wandfluh v. Wandfluh, 716 S.W.2d 420, 422 (Mo.App.1986). For the reasons stated below, we are constrained to dismiss appeal no. 26073 for lack of jurisdiction. The cause is remanded with directions to vacate the judgment and to dismiss Case 1265DR for lack of jurisdiction.
The jurisdiction of a court to adjudicate a controversy rests on three essential elements: (1) jurisdiction of the subject matter; (2) jurisdiction of the res or the parties; and (3) jurisdiction to render the particular judgment in the particular case. Missouri Soybean Ass'n v. Missouri Clean Water Comm'n, 102 S.W.3d 10, 21 (Mo. banc 2003); Jenkins v. Croft, 63 S.W.3d 710, 712 (Mo.App.2002). A judgment issued in excess of the trial court's jurisdiction is void. State ex rel. Nixon v. Sweeney, 936 S.W.2d 239, 242 (Mo.App.1996); Travis v. Contico Int'l, Inc., 928 S.W.2d 367, 370 (Mo.App.1996). Therefore, we must examine, in turn, each element essential to the trial court's exercise of jurisdiction in this case.
Subject matter jurisdiction refers to the court's authority to hear and determine cases of the general class to which the proceeding in question belongs. Missouri Soybean Ass'n, 102 S.W.3d at 22; Bullmaster v. Krueger, 151 S.W.3d 380, 387 n. 4 (Mo.App.2004). In Missouri, the *406 custody of a child may be adjudicated in at least five types of actions: (1) dissolution; (2) habeas corpus; (3) juvenile; (4) guardianship; and (5) paternity. See State ex rel. Dubinsky v. Weinstein, 413 S.W.2d 178, 180 (Mo. banc 1967); Chipman v. Counts, 104 S.W.3d 441, 446 (Mo.App. 2003); McCoy v. Rivera, 926 S.W.2d 78, 80 (Mo.App.1996); § 210.841.3(2). The Circuit Court of Pulaski County, Missouri, is authorized by statute to hear and determine the general class of cases to which this proceeding belongs: the appropriate custody arrangement for a child after the dissolution of his or her parents' marriage. See § 452.375; In re Marriage of Holden, 977 S.W.2d 951, 954 (Mo.App.1998). Therefore, the trial court had subject matter jurisdiction over Father's petition for custody. See Matter of McGlaughlin, 885 S.W.2d 33, 34 (Mo.App.1994).
The trial court also had personal jurisdiction over the parties. By filing the petition for custody and requesting relief from the trial court, Father voluntarily submitted to its jurisdiction. See Bennett v. Shaul, 318 S.W.2d 307, 309 (Mo.1958); Manning v. Fedotin, 64 S.W.3d 841, 848 (Mo.App.2002). The same is true for the Councils because they voluntarily intervened in this action and sought third-party custody of C.D. There was personal jurisdiction over Mother because she did not raise the issue by answer or separate motion, and she voluntarily appeared and defended against Father's petition for custody on the merits. See Rule 55.27(g); In re Adoption of J.P.S., 876 S.W.2d 762, 767 (Mo.App.1994).[3]
It is the last element  jurisdiction to render the particular judgment in this particular case  which we find lacking. The probate division of the Pulaski Circuit Court has subject matter jurisdiction to award custody of a child to a third party, rather than the natural parent, via letters granted in an action to obtain guardianship of a minor child if the parent is adjudged unfit. See § 475.030.4(2); McGlaughlin, 885 S.W.2d at 34. A different division of that same circuit court would have subject matter jurisdiction to award custody of a child to a third party in a dissolution action. See Holden, 977 S.W.2d at 954; McGlaughlin, 885 S.W.2d at 34. Thus, the Circuit Court of Pulaski County would have concurrent jurisdiction over each type of case.
The problem here is that an attempt was made to litigate C.D.'s custody in both types of proceedings simultaneously. When Father filed his petition for custody of C.D. in the Pulaski County Circuit Court in Case 1265DR, the Councils had already been issued letters of guardianship of C.D. by the probate division of that same court in Case 150P. Father sought to challenge the continuation of the guardianship by filing a petition to have it terminated. While this petition to terminate was pending in the guardianship action, Father also filed a different petition with a different division of the same court in which he sought to obtain custody of C.D. pursuant to the provisions of § 452.375. The earlier-filed guardianship proceeding in Case 150P, as well as the petition to terminate same, involved the same subject matter (custody of C.D.), parties (Father, Mother and the Councils) and issues (whether third-party custody was necessary because C.D.'s natural parents were unfit) as Father's later-filed petition for custody in Case 1265DR. Mother timely raised the trial court's lack of jurisdiction in Case 1265DR in her answer and again by way of an oral motion to dismiss at the commencement of the trial. The trial court overruled the motion and proceeded to *407 grant third-party custody to the Councils. The trial court lacked jurisdiction to render that particular judgment in Case 1265DR.
By purporting to exercise jurisdiction over Father's petition for custody, the trial court ran afoul of the "concurrent jurisdiction doctrine." This doctrine provides that "if two courts can exercise jurisdiction over a particular person and subject, the court that first exercises such jurisdiction does so to the exclusion of subsequent intervention by the second court." In re Care and Treatment of Lieurance, 130 S.W.3d 693, 697 (Mo.App. 2004); see State ex rel. Standefer v. England, 328 S.W.2d 732, 735 (Mo.App.1959). This principle of law is also referred to as "abatement" and as "the pending action doctrine." See, e.g., Patrick v. Koepke Const., Inc. v. Woodsage Const. Co., 119 S.W.3d 551, 555-56 (Mo.App.2003); Meyer v. Meyer, 21 S.W.3d 886, 889-90 (Mo.App. 2000); Bellon Wrecking & Salvage Co. v. David Orf, Inc., 983 S.W.2d 541, 548 (Mo. App.1998). However denominated, an essential component of this doctrine is that the court in which the claim is first filed acquires exclusive jurisdiction over the matter; the second suit should be dismissed. Patrick, 119 S.W.3d at 556; Bellon Wrecking & Salvage Co., 983 S.W.2d at 548. To permit both suits to continue "would cause unseemly clashes of authority between courts of equal dignity and jurisdiction, and would permit one, in the midst of a lawful exercise of jurisdiction first obtained by the other, to step in and overthrow the proceedings thus rightfully instituted and lawfully carried out by the other. It seems clear this should not be allowed...." State ex rel. Coffield v. Buckner, 198 Mo.App. 230, 200 S.W. 94, 96 (1917).
This concurrent jurisdiction doctrine has been applied in a number of cases to preclude two courts from exercising jurisdiction at the same time over a case involving the custody of a child. See, e.g., State ex rel. Balch v. Dalton, 627 S.W.2d 295, 298 (Mo. banc 1982) (circuit court did not have jurisdiction over a later-filed adoption case because the minor child was subject to the continuing, exclusive jurisdiction of the juvenile court); State ex rel. Burtrum v. Smith, 357 Mo. 134, 206 S.W.2d 558, 562 (1947) (first-filed dissolution action acquired exclusive jurisdiction over the issue of the minor child's custody; a trial court purporting to exercise jurisdiction over the same child's custody, via a writ of habeas corpus, exceeded its jurisdiction in the particular case, even though it may have had general jurisdiction of the subject matter and parties); B.M.P. v. G.H.P., 612 S.W.2d 843, 844-45 (Mo.App.1981) (where mother was found unfit and father was awarded custody of their minor child in a dissolution action, another division of the same circuit court lacked jurisdiction to adjudicate the child's custody via a later-filed writ of habeas corpus); State ex rel. McCarty v. Kimberlin, 508 S.W.2d 196, 199-200 (Mo.App.1974) (the trial court in a habeas corpus proceeding did not have jurisdiction to adjudicate the custody of a minor child when the child's grandmother had already been awarded custody by the juvenile division of that same court).
Based on our review of the foregoing authorities, we conclude the trial court lacked jurisdiction to grant third-party custody of C.D. to the Councils in Case 1265DR. Exclusive jurisdiction over C.D.'s custody rested with the probate division in Case 150P and continues until the guardianship is terminated. See Blackburn v. Mackey, 131 S.W.3d 392, 396-97 (Mo.App.2004). Accordingly, the judgment of January 23, 2004 was issued in excess of the trial court's jurisdiction and is void. State ex rel. Nixon v. Sweeney, *408 936 S.W.2d 239, 242 (Mo.App.1996). Because the trial court lacked jurisdiction to enter the judgment, we also lack jurisdiction over Father's appeal from the judgment. Henningsen v. Independent Petrochemical Corp., 875 S.W.2d 117, 118 (Mo. App.1994); Wandfluh v. Wandfluh, 716 S.W.2d 420, 422 (Mo.App.1986).
Father's appeal is dismissed. The cause is remanded with directions to the trial court to vacate its judgment of January 23, 2004 and to dismiss the proceeding for lack of jurisdiction. See Outcom, Inc. v. City of Lake St. Louis, 996 S.W.2d 571, 576 (Mo. App.1999); Ray v. Lake Chevrolet-Oldsmobile, Inc., 714 S.W.2d 928, 931 (Mo.App. 1986).
PARRISH, P.J., and SHRUM, J., Concur.
NOTES
[1] All references to statutes are to RSMo (2000).
[2] The Councils' motion to intervene in this case was sustained by the trial court in February 2002.
[3] All references to rules are to Missouri Court Rules (2005).